UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BARRY JOHN STIFF,

       Petitioner,

v.                                  Case Number 08-14823
                                      Honorable Thomas L. Ludington

THOMAS K. BELL,

       Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,**
**GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND**
**GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Barry John Stiff, presently confined at Gus Harrison Correctional Facility in Adrian, Michigan, has filed an application for the writ of habeas corpus pursuant to 28 U.S.C. 2254. Petitioner was convicted of first-degree and fourth-degree criminal sexual conduct ("CSC") in Genesee County Circuit Court. He was sentenced to imprisonment for twenty-five to fifty years for first-degree CSC and one to two years for fourth-degree CSC. Petitioner purports to have newly discovered evidence, and he alleges violations of his constitutional rights to due process, to confront the witnesses against him, and to effective assistance of counsel. Respondent has filed an answer urging the Court to deny the petition. Petitioner is not entitled to the relief he seeks and therefore, the petition will be denied.

I.

A.

Petitioner was charged with three counts of first-degree CSC and one count of fourth-degree

CSC.  The charges arose from allegations that Petitioner engaged in four sex acts with his stepdaughter at their home in Burton, Michigan.  The first count charged Petitioner with cunnilingus in May or June of 1998 when the complainant was under thirteen years old.  The second and third counts charged Petitioner with fellatio in May of 2002 when the victim was thirteen, fourteen, or fifteen years old and a member of the same household.  The fourth count charged Petitioner with fondling the complainant's breasts on August 12, 2002, when the complainant was sixteen years old.

The complainant described these incidents at trial.  She claimed that, after the first incident, Petitioner told her that he would deny everything and pass a polygraph test if she reported the incident.  She told her cousin about the incident, and her mother eventually questioned her.  Her mother, however, became hostile after she discussed the incident with the complainant, and she was later told that Petitioner had passed a polygraph test.  The complainant then informed her mother that her prior statement about Petitioner was not true.  In May of 2002, Petitioner asked the complainant to perform oral sex on him on two occasions.  Finally, on August 12, 2002, he fondled her breasts while they were working in the back yard.  The complainant's mother observed Petitioner's conduct and called the police.  The complainant initially denied everything and told her mother that she was crazy and seeing things.  After the police left, she informed her mother that everything was true.  Her mother then called the police a second time.

The complainant explained that she did not disclose the abuse to her mother sooner because she did not think her mother would believe her, and she did not want to make her mother unhappy. She also wanted to keep the family together, and she figured that she could move out of the house when she turned eighteen.

Renee Stiff, the complainant's mother, testified that she observed Petitioner fondling her

daughter's breast on August 12, 2002. When she confronted them, they both told her that she was crazy and hallucinating. She called the police, and when the officers arrived, she heard Petitioner tell the complainant not to say anything. Petitioner told Mrs. Stiff that if he thought he was going to jail over something like this, he would rather see them dead. After Petitioner and the officers left the house, the complainant divulged everything. The complainant explained to her that the abuse had been happening for four years and that she had been afraid to say anything while Petitioner was present, but that she was glad her mother had finally seen it.

The only other witnesses were two police officers who were dispatched to the Stiffs' home after the incident on August 12, 2002. Burton police officer Mark Mahon testified that Mrs. Stiff had called the police and that she was upset when he tried to determine what had happened. Mrs. Stiff informed him that she had observed Petitioner fondling her daughter's breasts and that she was certain of what she had seen even though Petitioner and her daughter had denied the allegations.

Officer James DuPlanty testified that he arrived at the Stiff home about the same time as Officer Mahon. He heard a man and woman arguing. When the couple observed the officers, Mrs. Stiff pointed to Petitioner and said, "There he is." Officer DuPlanty took Petitioner to his squad car for questioning. He also asked the complainant for her version of the incident. Both the complainant and Petitioner denied Mrs. Stiff's allegations. Officer DuPlanty concluded that their stories were not believable, but he did not arrest Petitioner. Instead, he advised Petitioner to leave the home. Officer DuPlanty left the premises shortly after Petitioner did, but he was called back to the home about ten to fifteen minutes later. He then spoke privately with the complainant and heard a different version of the events. The complainant informed him that Petitioner had touched her breasts and that other sexual activity had occurred between them.

-3-

Petitioner did not testify or present any witnesses.  His defense was that the prosecution witnesses were not believable, that the prosecution had not proved its case, and that the complainant's accusations were motivated by a desire to avoid a move to Three Rivers, Michigan where Petitioner had found a job.  Defense counsel also insinuated that Mrs. Stiff had influenced the complainant to make the accusations so that she would gain a tactical advantage in divorce proceedings against Petitioner.  Mrs. Stiff, however, claimed that Petitioner had been her soul mate and that she did not seek a divorce until a few days after the incident on August 12, 2002.

B.

On February 5, 2003, a Genesee County Circuit Court jury found Petitioner guilty of one count of first-degree CSC, Mich. Comp. Laws § 750.520b(1)(d) (sexual penetration of a victim under thirteen years of age), and one count of fourth-degree CSC, Mich. Comp. Laws § 750.520e(1)(d) (sexual contact with a victim within the third-degree of affinity).  The jury was unable to reach a unanimous verdict on the second and third counts, which charged Petitioner with first-degree CSC.  The trial court sentenced Petitioner to imprisonment for twenty-five to fifty years for first-degree CSC and one to two years for fourth-degree CSC.

Petitioner argued in an appeal of right that (1) he was denied his right to confront the complainant concerning past allegations of misconduct about her biological father, (2) the trial court abused its discretion by admitting the complainant's statements to her mother, and (3-4) trial counsel was ineffective for providing erroneous sentencing advice and for failing to inform him of the trial court's evidentiary decision about the admission of the complainant's allegations about her biological father.  The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions in an unpublished, *per curiam* opinion.  *See People v. Stiff*, No. 247827 (Mich. Ct. App.

-4-

June 10, 2004).

In an application for leave to appeal in the Michigan Supreme Court, Petitioner raised the same issues and some additional claims regarding new evidence, "other acts" evidence, his sentence, and the cumulative effect of errors. On March 31, 2005, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Stiff*, 693 N.W.2d 823 (Mich. 2005), *cert. denied*, 546 U.S. 1103 (2006).

On January 10, 2007, Petitioner filed a motion for relief from judgment. The trial court denied Petitioner's motion because Petitioner's attorney advanced no authority for the claims and the motion failed to establish the facts justifying the relief sought. On appeal from the trial court's decision, Petitioner argued that (1) the trial court erred when it denied his post-conviction motion; (2) the interests of justice permit courts to grant a delayed motion for new trial at any time; (3) ineffective assistance of counsel was "cause" for his errors and omissions; (4) the "good cause" requirement of Michigan Court Rule 6.508(D) should be waived; (5) he was denied his right to confront the witnesses against him; (6) he was entitled to a new trial on the basis of new evidence that casts his trial in a new light; (7) trial counsel was ineffective by failing to seek expert services, interview critical witnesses, and effectively challenge the State's case; (8) assuming that his counsel was not ineffective, Petitioner was entitled to a new trial on the basis of newly discovered evidence; (9) the cumulative effect of these errors deprived him of due process; and (10) the state court should revisit the *Blakely*[1] issue. The Michigan Court of Appeals denied leave to appeal on the ground that Petitioner had failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Stiff,* No. 283732 (Mich. Ct. App. Apr. 18, 2008).

---

[1] *See Blakely v. Washington*, 542 U.S. 296 (2004).

Petitioner raised the same issues, with the exception of his claim based on *Blakely v. Washington* claim, in his application for leave to appeal in the Michigan Supreme Court.  On October 27, 2008, the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Stiff*, 769 N.W.2d 203 (Mich. 2008).

C.

Petitioner filed his federal habeas petition through counsel on November 17, 2008, raising the following grounds for relief:

I.   Mr. Stiff was denied his constitutional right to confront the witnesses against him and present a defense when the trial court required a demonstration of "concrete evidence" that the complainant's prior sexual assault claims were in fact false.

II.   Mr. Stiff was denied his Sixth Amendment right to counsel when his trial counsel A) failed to properly seek out expert services, failed to interview critical witnesses, and failed to otherwise effectively challenge the State's case; and B) failed to convey negative judicial rulings to the defendant and failed to accurately convey sentencing consequences to the defendant.

III.   Assuming that it was not ineffective assistance of counsel for counsel to not discover the foregoing evidence, then this Court should grant Mr. Stiff a new trial based on newly discovered evidence.

IV.   Mr. Stiff was deprived of due process by the Court allowing the 404(B) evidence despite the prosecutor's lack of notice and its substantial prejudicial effect.

V.   The cumulative effect of these errors denied the defendant due process of law.

VI.   This Court should conditionally grant the writ of habeas corpus where the petitioner's mandatory guideline sentence was significantly expanded by the trial judge's informal fact-finding of facts never found by and which were questioned by the jury in violation of *United States v. Booker*.

Petitioner's attorney subsequently requested permission to withdraw as counsel for Petitioner. Respondent then filed an answer to the petition, asserting that Petitioner's claims were unexhausted, procedurally defaulted, not cognizable on habeas review, or without merit. The Court subsequently granted the motion to withdraw as counsel, and Petitioner filed a *pro se* reply brief.

To the extent that any of Petitioner's claims are unexhausted or procedurally defaulted, the alleged procedural errors are excused because exhaustion and procedural default are not jurisdictional limitations. *See Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, --- U.S. ---, 130 S. Ct. 3274 (2010). The Court will proceed to address the merits of Petitioner's claims.

## II.

State prisoners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id*. at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 786 (2011). To obtain a writ of habeas corpus from a federal court, a petitioner must show that the state court's decision "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility [of] fairminded disagreement." *Id*. at 786-87.

III.

A.

Petitioner alleges that he was denied his constitutional right to confront the witnesses against him and his right to present a defense when the trial court prevented him from asking the complainant about previously accusing her biological father of sexual abuse. Petitioner claims that the complainant accused her biological father of sexual abuse in order to get away from him and that she had a similar motive for accusing him of sexual abuse. Petitioner maintains that the excluded evidence would have explained the complainant's motive to lie and also would have supported his

theory that Mrs. Stiff encouraged the complainant to lie in order to gain a tactical advantage in divorce proceedings against Petitioner.

The trial court excluded the evidence pursuant to a rule that required a defendant to show that the prior accusations of sexual assault were false. Because defense counsel could not show that the prior accusations were false, the trial court prohibited him from raising the issue at trial.

The Michigan Court of Appeals adjudicated this claim on direct review. The Court of Appeals did not address the federal constitutional aspect of Petitioner's claim. Instead, the Court of Appeals held that the trial court did not abuse its discretion when it sustained the prosecutor's objection to the evidence, because Petitioner failed to provide any evidence that the victim's accusation against her biological father was false.

1.

The Confrontation Clause of the Sixth Amendment to the United States Constitution applies to the States and "guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.' The right of confrontation includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (citing *Pointer v. Texas*, 380 U.S. 400, 404, 406-07 (1965)). Cross-examination may be used to test the believability of a witness and to reveal a witness's biases, prejudices, partiality, or ulterior motives. *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974).

> Where it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion, though of course that discretion may be abused.
>
> [T]he test in such circumstances is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory. "[O]nce cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied."

*Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989) (citations omitted).

-9-

The Constitution also

> guarantees criminal defendants a meaningful opportunity to present a complete
> defense.  This right is abridged by evidence rules that infring[e] upon a weighty
> interest of the accused and are arbitrary or disproportionate to the purposes they are
> designed to serve.

*Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks and citations omitted).

Nevertheless, "[t]he accused does not have an unfettered right to offer testimony that is incompetent,

privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S.

400, 410 (1988).

> While the Constitution thus prohibits the exclusion of defense evidence
> under rules that serve no legitimate purpose or that are disproportionate to the ends
> that they are asserted to promote, well-established rules of evidence permit trial
> judges to exclude evidence if its probative value is outweighed by certain other
> factors such as unfair prejudice, confusion of the issues, or potential to mislead the
> jury. . . .  [T]he Constitution permits judges to exclude evidence that is repetitive .
> . . , only marginally relevant or poses an undue risk of harassment, prejudice, or
> confusion of the issues.

*Holmes v. South Carolina*, 547 U.S. at 326-27 (quotation marks and citations omitted).

2.

The question, then, is whether Petitioner's right to confront the witnesses against him and

his right to defend himself were violated by the trial court's decision that he could not present

evidence that the complainant had previously accused her biological father of sexual abuse.  At a

pretrial hearing on this issue, defense counsel claimed that the complainant had made similar

allegations about her biological father years earlier in the context of a child custody and visitation

case.  During the child custody dispute, the complainant informed the trial court by letter that her

biological father had touched her inappropriately and that she did not  want to visit him.  Defense

counsel maintained at the hearing that the complainant had a similar ulterior motive for her

-10-

allegations in the criminal case against Petitioner: she wanted to avoid moving to a different city. Defense counsel admitted that he did not know whether the complainant's allegations about her biological father were false. (Tr. Jan. 30, 2003, at 3-9.)

The prosecutor emphasized at the hearing that the complainant made the allegations about her biological father when she was eight years old after viewing a videotape at school about good and bad touches. The complainant had said that, when she was three or four years old, her biological father would touch her inner thigh and vaginal area. A protective services agency did not substantiate the claim, but did confront the biological father, who denied the allegations. The father admitted, however, that he had tickled the complainant in some inappropriate areas in the past. The prosecutor argued that the complainant's allegations of prior sexual abuse were true and, therefore, defense counsel was precluded from admitting the evidence. (*Id.* at 9-11.) The trial court agreed and denied defense counsel's request to admit evidence of the complainant's accusations against her biological father because there was no clear evidence that the accusations were false. (*Id.* at 13-15.)

Precluding inquiry into unrelated accusations of criminal sexual conduct does not offend the Confrontation Clause, *McMeans v. Brigano*, 228 F.3d 674, 683 (6th Cir. 2000) (citing *United States v. Bartlett*, 856 F.2d 1071, 1087-89 (8th Cir. 1988)), particularly when, as here "there was no evidence that the victim's prior accusation was false." *United States v. Hamilton*, 234 F. App'x 719, 721 (9th Cir. 2007). Even where there is evidence of a prior false accusation, "not all evidence that is 'the least bit probative of credibility' must be admitted." *United States v. Tail*, 459 F.3d 854, 860 (8th Cir. 2006) (citing *United States v. Bartlett*, 856 F.2d at 1088, and *Davis*, 415 U.S. at 321 (Stewart, J., concurring)).

> [I]n a sexual abuse case, evidence alleging that the accuser made prior false accusations may be excluded if the evidence has minimal probative value. *Bartlett*,

856 F.2d at 1089; [*United States v.*]*White Buffalo*, 84 F.3d [1052, 1054 (8th Cir. 1996)]. And the propriety of excluding such evidence is strengthened where the prior incident is unrelated to the charged conduct, and where the defendant intends to use the evidence as part of an attack on the 'general credibility' of the witness. *Bartlett*, 856 F.2d at 1088.

*Id.*

The excluded evidence here involved similar conduct (sexual abuse of a minor relative), but it pertained to someone other than Petitioner, and defense counsel wanted to use the evidence to attack the complainant's credibility. The excluded evidence did not have a strong potential to demonstrate the falsity of the complainant's testimony about Petitioner, given the corroborating testimony of the other prosecution witnesses. The jury, moreover, had enough information to assess the defense theory, despite the limits placed on cross-examination. Accordingly, Petitioner's right to defend himself and his right to confront the complainant and her mother were not violated.

3.

Even if Petitioner's constitutional rights to present a defense and to confront witnesses were violated, an error is harmless unless it had a substantial and injurious effect or influence on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Defense counsel was permitted to elicit testimony that the complainant did not want to move to Three Rivers, Michigan, and that the family was planning to move there approximately three weeks after the last incident of sexual abuse. (Tr. Jan. 31, 2003, at 237-38.) Defense counsel also elicited testimony that the complainant had informed her mother about the 1998 incident with Petitioner and then retracted her allegations. (*Id.* at 239, 241.) The complainant admitted on cross-examination that, after the last incident of inappropriate touching on August 12, 2002, she informed both her mother and the police that nothing had happened even though Petitioner

-12-

did not pressure her to remain quiet.  (*Id*. at 251-54.)  Because "the jury had before it facts from which bias, prejudice or lack of credibility" of the complainant "might be inferred," the alleged constitutional errors were harmless.  *United States v. Stavroff*, 149 F.3d 478, 482 (6th Cir. 1998) (quoting *Dorsey v. Parke*, 872 F.2d at 167 (quoting *United States v. Garrett*, 542 F.2d 23, 25 (6th Cir. 1976)) (quotation marks omitted).

### B.

Petitioner alleges next that he was denied his Sixth Amendment right to effective assistance of counsel.  Specifically, Petitioner contends that his trial attorney should have hired expert services, interviewed critical witnesses, and more effectively challenged the State's case.  Petitioner further alleges that defense counsel failed to inform him of adverse judicial rulings and sentencing consequences.

### 1.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be

substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. at 788 (internal and end citations omitted).

### 2.

Petitioner alleges that his trial attorney never consulted a defense expert. Although Petitioner maintains that a defense expert could have refuted the State's allegations, he has not alleged the type of expert his attorney should have consulted or what the expert would have said in his defense. Petitioner also alleges that his attorney failed to challenge the prosecutor's attack on his character and her attempt to curry sympathy for the complainant, but he has not cited to the record, nor alleged any specific facts to support these allegations.

Petitioner contends that defense counsel failed to introduce evidence of the complainant's propensity to lie and manipulate people. This evidence, however, probably would not have been admissible. *See* Mich. R. Evid. 404(a)(3) (stating that the character of an alleged victim of sexual conduct crime is not admissible to prove conduct except in circumstances not applicable here). Petitioner has failed to show that defense counsel's performance was deficient as a result of his failure to use expert services, challenge the prosecutor's conduct, or introduce character evidence.

### 3.

Petitioner contends that trial counsel should have investigated and presented evidence that the complainant's biological father denied sexually assaulting the complainant. The record, however, indicates that defense counsel did attempt to investigate the matter. He stated at a pretrial hearing on his motion to introduce evidence of the complainant's allegations about her biological father that the complainant would not talk to him and that he had sent a private investigator to the

biological father's house in an attempt to get the father to talk to him or to the court. He apparently was unsuccessful in communicating with the biological father. Consequently, he requested an *in camera* hearing so that the trial court could determine whether the complainant's allegations were false. The trial court denied his request. (Tr. Jan. 30, 2003, at 11-12, 14.)

Even if defense counsel's failure to pursue the matter amounted to deficient performance, the deficient performance did not prejudice the defense. As explained above, defense counsel attempted to impeach the complainant at trial, and "the jury had before it facts from which bias, prejudice or lack of credibility" of the complainant might be inferred. *United States v. Stavroff*, 149 F.3d at 482. Thus, counsel's allegedly deficient performance did not prejudice the defense.

4.

Petitioner alleges that his trial attorney failed to inform him of the trial court's decisions. Specifically, Petitioner contends that defense counsel failed to inform him of the trial court's denial of his request to admit testimony regarding the complainant's prior allegations about her biological father. *See* Petitioner's Reply to Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus, at 21. In his state appellate brief, Petitioner argued that he would have accepted the State's plea offer if he had been aware of the trial court's ruling.

The record indicates that Petitioner rejected the State's plea offer *before* the trial court decided that Petitioner could not elicit testimony regarding the complainant's allegations about her biological father. (Tr. Jan. 30, 2003, at 14-15, 18.) The Michigan Court of Appeals finding that the trial court's unfavorable ruling could not have played a significant role in Petitioner's decision to reject the plea offer, therefore, has some merit. Defense counsel, moreover, was not ineffective for failing to predict the trial court's evidentiary ruling. *Fountain v. Kyler*, 420 F.3d 267, 277 (3d Cir.

2005) (collecting cases).

5.

a.

Petitioner also alleges that defense counsel failed to inform him of the sentencing consequences attendant to his decisions.  On direct appeal, Petitioner claimed that trial counsel incorrectly informed him that the sentencing guidelines reflected a score of eleven and a half to eighteen and a half years on the most serious charges (CSC in the first degree).  The actual sentencing guidelines score for the minimum sentence on first-degree CSC was ten to twenty-five years.  Petitioner was sentenced within those guidelines to a minimum sentence of twenty-five years for first-degree CSC.  He argued in state court that he would have accepted the State's offer to plead guilty to attempted CSC in the first degree with a maximum penalty of five years in prison if he had been correctly informed that he could be sentenced to a minimum term of twenty-five years, as opposed to eighteen and a half years, for first-degree CSC .

The trial court held a post-judgment hearing on this issue and rejected Petitioner's claim. The trial court concluded that there was no "but for" connection between defense counsel's mistaken advice on the sentencing guidelines and Petitioner's decision to reject the plea offer.  (Tr. Sept. 15, 2003, at 8-9.)

b.

"Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."  *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).  Consequently, "a petitioner who claims that his counsel was ineffective for encouraging him to reject a plea bargain and go to trial states a viable Sixth Amendment claim."

-16-

*Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir. 1988)).

Defense counsel in this case calculated the sentencing guidelines under the new version of the legislative guidelines that were currently in effect instead of under the former guidelines used by the trial court for Petitioner's sentencing. Accordingly, it is fair to presume that defense counsel's use of the wrong version of the guidelines and his incorrect advice to Petitioner amounted to deficient performance.

To prevail on his claim, however, Petitioner must also show that his attorney's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Petitioner must demonstrate that, "but for his counsel's advice, there is a reasonable probability that he would have pleaded guilty." *Magana*, 263 F.3d at 547; *see also Cooper v. Lafler*, 376 F. App'x 563, 572 (6th Cir. 2010) (rejecting the view that there is no prejudice if the petitioner ultimately received a fair trial, because that view understates the value of plea bargaining), *cert. granted*, --- U.S. ---, 131 S. Ct. 856 (2011). Two objective factors, in addition to the defendant's own declarations, may be used to determine whether there was a reasonable probability that the defendant would have accepted the plea offer had he known his true sentencing exposure: (1) the disparity between the prison sentence offered and the sentence he received as a result of the jury's verdict; and (2) the defendant's reaction to the plea offer. *Magana*, 263 F.3d at 551-52.

There was a large disparity between the prison sentence offered (a maximum of five years in prison) and Petitioner's true sentencing exposure (a minimum sentence of ten and up to twenty-

five years).  The large disparity counsels in favor of finding a reasonable probability that Petitioner would have pleaded guilty if he had known his true sentencing exposure.

Petitioner's reaction to the plea offer, however, indicates that he would not have accepted the plea offer even if he had known the accurate sentencing guidelines range.  He rejected a ceiling on his sentence of five years, with the understanding that he could be sentenced to a minimum term of eighteen and a half years.  For this reason, it does not appear that Petitioner seriously considered pleading guilty.  As the trial court recognized, a defendant who rejects a plea offer with five-year maximum sentence is not focusing on whether his sentencing guidelines are eighteen and a half or twenty-five years.  So, "it is extremely unlikely that the difference in the ranges' higher ends would have altered [Petitioner's] disposition toward the plea."  *Stiff*, Mich. Ct. App. No. 247827, at 2.

Furthermore, defense counsel informed Petitioner before trial that he faced the possibility of life imprisonment for the crimes.  Despite the risk of receiving a sentence of life imprisonment, Petitioner opted to proceed with his trial.  (Tr. Jan. 31, 2003, at 4-5.)

Petitioner also maintained his innocence.  His assertion of innocence in state court and here tends to support the conclusion that he would not have pleaded guilty had he been properly advised of the sentencing consequences.  *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005); *cf. Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (stating that "declarations of innocence are . . . not dispositive of the question of whether [the defendant] would have accepted the government's plea offer").

The state courts determined that there was not a reasonable probability Petitioner would have pleaded guilty but for his attorney's inaccurate advice.  This conclusion was objectively reasonable. Even if the state appellate court's decision was " 'a close call,' that fact 'militates against the

conclusion that the state court's application of the relevant Supreme Court precedent was objectively unreasonable.' " *Lovell v. Duffey*, 629 F.3d 587, 598 (6th Cir. 2011) (citing *Lopez v. Wilson*, 426 F.3d 339, 358 n.1 (6th Cir. 2005) (*en banc*) (Cole, J., concurring)), *petition for cert. filed*, (U.S. May 16, 2011) (No. 10-10543).

6.

Petitioner has failed to show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. The Court therefore declines to grant the writ on the basis of Petitioner's ineffective-assistance-of-counsel claims.

C.

Petitioner argues next that the Court should grant him a new trial on the basis of new evidence that the complainant's biological father vehemently denies touching the complainant inappropriately. Petitioner contends that this evidence, coupled with the complainant's reputation for being untruthful and statements by other people that the complainant had a motive for fabricating her allegations, would have caused a different result at trial.

To the extent that Petitioner is claiming to have newly discovered evidence of actual innocence, his claim lacks merit because "a claim of 'actual innocence' is not itself a constitutional claim," *Herrera v. Collins,* 506 U.S. 390, 404 (1993), and the Supreme Court has "described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.' " *House v. Bell*, 547 U.S. 518, 555 (2006) (quoting *Herrera*, 506 U.S. at 417). A habeas petitioner must show that "new reliable evidence establishes his innocence by a more-likely-than-not standard." *Ross v. Berghuis*, 417 F.3d 552, 556 (6th Cir. 2005). Stated differently, the petitioner must show that, "in light of the new evidence . . . , more likely than not any reasonable juror would have reasonable

-19-

doubt." *House*, 547 U.S. at 538.

Petitioner is relying on evidence that purports to show the victim was not credible. Impeachment evidence is "a step removed from evidence pertaining to the crime itself" and "provides no basis for finding" actual innocence. *Calderon v. Thompson*, 523 U.S. 538, 562-63 (1998); *see also Vasquez v. Bradshaw*, 345 F. App'x 104, 115 (6th Cir. 2009) (noting that impeachment evidence is not direct evidence of innocence). The Court therefore rejects Petitioner's claim of new evidence and actual innocence.

D.

Petitioner alleges that he was deprived of due process by the admission of evidence of other sexual conduct between him and the complainant. Petitioner contends that the prosecutor failed to provide notice of her intent to introduce the evidence and the evidence had a substantial prejudicial effect on the defense.

This claim lacks merit because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007) (concluding that the petitioner's disagreement with the state court's ruling on "other acts" evidence involved no constitutional dimension and, therefore, was not cognizable on federal habeas review). Because no Supreme Court decision bars the use of propensity evidence on constitutional grounds, the state courts' rejection of this claim was not contrary to Supreme Court

-20-

precedent.

Furthermore, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 68-70 (1991)). In other words, the Court "cannot grant the writ based on [its] disagreement with 'state-court determinations on state-law questions,' unless the state-court determination is so 'fundamentally unfair' that it deprives a defendant of due process." *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (internal and end citations omitted), *cert. denied*, --- S. Ct.---, 2011 WL 631061 (U.S. May 2, 2011) (No. 10-865).

Evidence that Petitioner engaged in other criminal sexual conduct with the complainant was not fundamentally unfair, because the trial court charged the jury to consider the evidence only for the limited purpose of judging the believability of testimony regarding the acts for which Petitioner was on trial. The trial court stated that the jurors must not convict Petitioner because they thought he was guilty of other bad conduct and that they must not conclude from the evidence that Petitioner was a bad person or likely to commit crimes. (Tr. Feb. 4, 2003, at 370-71.) The trial court also charged the jurors not to let sympathy or prejudice influence their decision. (*Id.* at 358). Juries generally are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. at 211. The Court therefore concludes that Petitioner's rights to due process and a fair trial were not violated by the introduction of other "bad acts" evidence.

### E.

The fifth habeas claim alleges that the cumulative effect of the alleged errors deprived

Petitioner of due process and a fair trial.  There can be no cumulative harm to Petitioner's due process rights because there is no merit in any of Petitioner's individual arguments.

Furthermore, "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).  Therefore, it cannot be said that the state court's decision was contrary to Supreme Court precedent so as to warrant relief under 28 U.S.C. § 2254(d).  *Id.*  Constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief.  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (citing *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002), and *Lorraine v. Coyle,* 291 F.3d at 447).  Petitioner is not entitled to relief on the basis of his claim that the cumulative effect of errors deprived him of a fair trial.

## F.

The sixth and final claim challenges Petitioner's sentence.  Petitioner alleges that the state court should revisit its position on *Blakely v. Washington* in light of the Supreme Court's decision in *Cunningham v. California,* 549 U.S. 270 (2007).  In *Blakely v. Washington*, the Supreme Court interpreted *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), in which the Supreme Court held that,  "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  The Supreme Court held in *Blakely v. Washington*

> that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

*Blakely v. Washington*, 542 U.S. at 303-304 (internal citations omitted).

-22-

In *Cunningham v. California*, the Supreme Court held that California's determinate sentencing law violates a defendant's right to trial by jury by placing sentence-elevating factfinding within the judge's province. Michigan, however, has an indeterminate sentencing scheme, and both the United States Court of Appeals for the Sixth Circuit and the Michigan Supreme Court have held that Michigan's indeterminate sentencing scheme does not violate a defendant's right to a jury trial. *See Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *People v. McCuller*, 739 N.W.2d 563, 566, 569 (Mich. 2007). Therefore, Petitioner's reliance on *Blakely v. Washington* and *Cunningham v. California* is misplaced.

IV.

For the reasons stated above, the state courts' decisions on Petitioner's claims were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts. Accordingly, the petition for writ of habeas corpus [Dkt. #1] is **DENIED**.

Reasonable jurists, however, could debate the Court's assessment of Claim I (alleging a denial of the right to defend and the right to confront witnesses) and Claim II.B. (alleging ineffective assistance of counsel in connection with counsel's failure to inform Petitioner of judicial rulings and sentencing consequences). Consequently, a certificate of appealability may issue on Claims I and II.B. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). The Court declines to issue a certificate of appealability on the remaining claims, because reasonable jurists would not find those claims debatable or wrong, nor conclude that the claims deserve encouragement to proceed further. *Id*.

-23-

Finally, Petitioner may proceed in forma pauperis on appeal because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 22, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Barry Stiff, #446812, at Gus Harrison Correctional Facility, 2727 E Beecher Street, Adrian, MI 49221  first class U.S. mail on June 22, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS